IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FAS CAPITAL, LLC,

       Plaintiff,

v.

CARL CARR,

       Defendant.

CIVIL ACTION NO.

1:11-cv-3224-JEC

## ORDER & OPINION

This case is before the Court on plaintiff's Motion for Summary Judgment [20]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that the motion [20] should be **DENIED without prejudice.**

## BACKGROUND

The facts of this case are for the most part undisputed. The parties agree that in June, 2005, defendant executed a promissory note in the principal amount of $250,150 in favor of Silverton Bank.[1] (Def.'s Resp. to Pl.'s Statement of Material Facts [22] at ¶ 1.) In September, 2008, defendant executed a second promissory note to Silverton Bank in the principal amount of $358,000. (*Id.* at ¶ 2.)

---

[1] At the time, Silverton Bank was called The Bankers' Bank. (Compl. [1] at ¶ 12.) The Bankers' Bank changed its corporate name to Silverton Bank. (*Id.*)

Upon Silverton's failure in 2009, the Federal Deposit Insurance Corporation ("FDIC") assumed the right to collect on the notes. (Compl. [1] at ¶¶ 5-6.)

Defendant concedes that he defaulted on both notes. (Def.'s Resp. [21] at 2.) The FDIC initiated this action to collect on the notes in September, 2011, in its capacity as Silverton's receiver. (Compl. [1] at ¶¶ 3-7.) The FDIC subsequently sold and transferred the notes to plaintiff FAS Capital, LLC ("FAS Capital"). (Pl. FDIC's Mot. to Substitute Party Pls.' [17] at 2.) In connection with the sale, the FDIC moved to substitute FAS Capital as the plaintiff in the case. (*Id.* at 1.) The Court granted the motion on June 26, 2012. (Order [23].)

Plaintiff has filed a motion for summary judgment on its claim to collect on the notes. (Pl.'s Mot. for Summ. J. [20].) Although defendant concedes his default on the promissory note, he challenges the Court's jurisdiction to entertain plaintiff's suit now that the FDIC has been dismissed as a party. (Def.'s Resp. [21] at 5-8.) Defendant further argues that plaintiff has (1) failed to establish that it is the holder of the notes and (2) not submitted competent evidence to substantiate the balances it claims are due on the notes. (*Id.* at 8-12.) Finally, defendant contends that plaintiff has failed to comply with the statutory requirements for recovering attorney's fees under O.C.G.A. § 13-1-11. (*Id.* at 12-13.)

2

**DISCUSSION**

**I.   SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).   A fact's materiality is determined by the controlling substantive law.   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant.   *Id.* at 249-50.

Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits.   Instead, Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of every element essential to that party's case on which that party will bear the burden of proof at trial.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).   In such a situation, there can be "'no genuine issue as to any material fact,'" as "a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial."   *Id.* at 322-23 (quoting FED. R. CIV. P. 56(c)).

AO 72A
(Rev.8/82)

The movant bears the initial responsibility of asserting the basis for his motion. *Id.* at 323. However, the movant is not required to negate his opponent's claim. The movant may discharge his burden by "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. After the movant has carried his burden, the non-moving party is required to "go beyond the pleadings" and present competent evidence designating "'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324.

In ruling on a motion for summary judgment, the Court must view the evidence and factual inferences in a light most favorable to the non-moving party. *Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988). However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247-48 (1986). The requirement is that there be no "*genuine* issue of *material* fact." *Id.*

## II. <u>PLAINTIFF'S RIGHT TO RECOVER UNDER THE NOTES</u>

In Count I of the complaint, plaintiff seeks to recover the amounts due on the notes. (Am. Compl. [11] at ¶¶ 51-58.) A debtor's admission of default establishes his creditor's prima facie case for recovery. *Pollard v. First Nat'l Bank of Albany,* 169 Ga. App. 598,

4

598 (1984).[2]  *See also Shropshire v. Alostar Bank of Commerce,* 314 Ga. App. 310, 315 (2012)("As to liability, '[a] plaintiff seeking to enforce a promissory note establishes a prima facie case by producing the note and showing that it was executed.'")(quoting *Core LaVista, LLC v. Cumming*, 308 Ga. App. 791, 795 (2011)).  When there is such an admission, "the burden shifts to the debtor to establish an affirmative defense." *Reece v. Chestatee State Bank*, 260 Ga. App. 136, 138 (2003).  To meet this burden, the debtor must point to specific facts and evidence in the record.  *Pollard*, 169 Ga. App. at 598.

     As indicated above, defendant admits that he is in default on both of the notes that he executed to Silverton Bank.  (Def.'s Resp. to PSMF [22] at ¶¶ 1-2.)  He does not raise any affirmative defenses or directly deny any of the facts set forth by plaintiff concerning the notes.  (Def.'s Resp. [21] at 2.)  Instead, defendant challenges the Court's jurisdiction to entertain plaintiff's claim to collect on the notes.  (*Id.* at 2-3.)  He also points to evidentiary deficiencies underlying plaintiff's claim to be the current holder of the notes and its statement of the amounts due under the notes.  (*Id.* at 8-11.)

---

     [2]  The parties agree that Georgia law applies to this case, pursuant to a choice of law provision in the notes.  (Pl.'s Mot. [20] at Exs. A & E.)

**A.    The Court has jurisdiction over the case.**

The FDIC filed this action in federal court under the authority of 12 U.S.C. § 1819.  (Compl. [1] at ¶ 10.)  The jurisdictional provision of that statute provides that any civil suit in which the FDIC "in any capacity, is a party shall be deemed to arise under the laws of the United States." 12 U.S.C. § 1819(b)(2)(A).  By its plain terms, § 1819(b)(2)(A) gives rise to federal question jurisdiction under 28 U.S.C. § 1331, which states that "[t]he district courts shall have original jurisdiction of all civil actions arising under the . . . laws . . . of the United States."  28 U.S.C. § 1331.

Defendant concedes that, by operation of § 1819, jurisdiction was proper when the FDIC filed the action.  (Def.'s Resp. [21] at 6-7.)  However, defendant contends that this jurisdictional grant is no longer applicable following the substitution of FAS Capital as the plaintiff and real party in interest in the case.  (*Id.* at 7.)  Plaintiff points out that FAS Capital has not asserted any other basis for the Court's jurisdiction, such as diversity.  (*Id.*)

The question presented then is whether federal question jurisdiction, which is created when the FDIC as plaintiff brings the action under § 1819, vanishes when the FDIC is subsequently dismissed from the case by virtue of the sale of its assets to another party, who is then substituted as plaintiff.  The Second Circuit has answered that question in the negative, concluding that federal

6

jurisdiction remains in this circumstance. *FDIC v. Four Star Holding Corp.,* 178 F.3d 97, 101 (2nd Cir. 1999)("the transfer of assets by FDIC to a private third party does not divest [a federal] court of subject matter jurisdiction"). The Third Circuit reached the opposite conclusion in *New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1501 (3rd Cir. 1996). Yet, although finding that original jurisdiction evaporated once the plaintiff federal receiver sold the assets and left the case,[3] the *New Rock* court nonetheless found that federal supplemental jurisdiction could still be properly exercised over the remaining parties, under 28 U.S.C. § 1367. *Id.* at 1504. In other words, both circuits agreed that a district court may continue to exercise jurisdiction after dismissal of the FDIC. With the Second Circuit, however, continuation of federal jurisdiction was mandatory, whereas the Third Circuit left the choice up to the district court, whose decision would be subject to an abuse of discretion standard.[4]

─────────────

[3] As noted *infra*, in a later case, the Third Circuit called into question the viability of the *New Rock* interpretation.

[4] Noting the disagreement between these circuits as to the basis of the continuation of federal jurisdiction once the FDIC leaves the lawsuit, the Ninth Circuit indicated that "[it] need not take sides," because even under the less generous standard imposed by the Third Circuit, the exercise of supplemental jurisdiction, governed by an abuse of discretion standard, was permissible. *Destfino v. Reiswig,* 630 F.3d 952, 958 (9th Cir. 2011). And, because the district court in the case before it had not abused its discretion when it continued to exercise jurisdiction after dismissal of the FDIC, the Ninth

7

Nor have circuit courts reached a different decision when a case has found its way into federal court through removal by the FDIC as a defendant, as opposed to the above-discussed scenarios in which the FDIC as plaintiff had filed the case in federal court.  Whether in the case as a plaintiff or a defendant, the FDIC's subsequent sale of its assets to another party does not rob the federal court of its jurisdiction.  *See Adair v. Lease Partners, Inc.*, 587 F.3d 238, 244 (5th Cir. 2009)(federal jurisdiction continues to exist under § 1819 after the FDIC is dismissed as a party) and *Casey v. FDIC*, 583 F.3d 586, 590-91 (8th Cir. 2009)(the same).

Indeed, since the above-cited decisions by other circuits, the Eleventh Circuit has recently, and explicitly, joined the ranks of the Second, Fifth, and Eighth Circuits,[5] concluding that "when the FDIC is a party to a civil suit and removes that case to federal court, the District Court has original jurisdiction over claims against non-FDIC defendants, and this jurisdiction is not lost if the FDIC is later dismissed from the case." *Lindley v. FDIC*, 733 F.3d 1043, 1058 (11th Cir. 2013). *Lindley* noted that the Third Circuit has, itself, recently called into question its earlier deviation in *New Rock* from the long-standing principle that jurisdiction is

---

Circuit upheld its decision.  *Id.*

[5]    "[W]e join the Second, Fifth, and Eighth Circuits in concluding that...jurisdiction is not lost if the FDIC is later dismissed from the case." *Lindley v. FDIC*, 733 F.3d 1043, 1058 (11th Cir. 2013).

8

determined at the time of filing.  *Id.* at 1058 n.11, quoting *Nuveen Mun. Trust ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.*, 692 F.3d 283, 294 (3rd Cir. 2012)("Although we once declined to apply the time of filing rule in a federal question case, [specifically, in *New Rock Asset Partners*], subsequent Supreme Court decisions demonstrate the continuing vitality of the rule.")(citation omitted.).

Although *Lindley* arose in a removal context, with the defendant FDIC removing the case to federal court, whereas here the FDIC initially brought the case as a plaintiff, those procedural differences do not affect the applicability of the principle adopted in *Lindley*.  This principle--that once federal question jurisdiction had been established by the FDIC's participation in the litigation, jurisdiction was not lost when the FDIC was dismissed from the case-- applies here.  Further, even without the Eleventh Circuit precedent, this Court would find *the* Fifth and Second Circuit's decisions in *Adair* and *Four Star Holding,* respectively, to be persuasive authority.  *Accord RADC/CADC Venture 2010-2, LLC v. Hunt Valley Prop., LLC,* Civil Action No. 1:10-CV-3395-RWS, 2012 WL 2921793, at *5 (N.D. Ga. July 17, 2012)(Story, J.)(following *Adair* and *Four Star Holding*).

In short, it is well-settled that "the existence of federal jurisdiction ordinarily depends on the facts as they exist when the

9

complaint is filed." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989). While there can be exceptions to this general rule, *id.*, this Court, like the Fifth Circuit, finds no authority nor any good reason to apply an exception under the circumstances presented here. *Adair,* 587 F.3d at 245. *See also Four Star Holding,* 178 F.3d at 101 (noting the absence of any authority or persuasive rationale for applying an exception to the time-of-filing analysis where federal jurisdiction is predicated on § 1819) and *Fed. Sav. & Loan Ins. Corp. v. Griffin*, 935 F.2d 691, 696 (5th Cir. 1991)("The power to remove is evaluated at the time of removal."). Neither is there any indication that Congress intended for federal jurisdiction to end once the FDIC is no longer a party to a case that was filed in federal court under § 1819. *Griffin*, 935 F.2d at 696.

Moreover, and as both the Fifth and Second Circuits recognized, continuing jurisdiction serves important policy goals in cases involving the FDIC. The vanishing jurisdiction rule that defendant proposes "'could well have the effect of deterring normal business transactions during the pendency of what might be [a] lengthy litigation.'" *Four Star Holding*, 178 F.3d at 100-01. *See also Griffin,* 935 F.2d at 696 (discussing the policy reasons in support of continuing jurisdiction under § 1819). Specifically, such a rule would hinder the FDIC's ability to effectively sell off the interests of a distressed bank while litigation is pending. *Four Star Holding,*

10

178 F.3d at 100-01.  This case is illustrative.  Defendant's notes undoubtedly would have been less appealing to FAS Capital had it known that it would have to initiate a separate state action to collect on the debt secured by them.[6]  For all of the above reasons, the Court concludes that it has original jurisdiction over this case under § 1819.

Alternatively, and even if federal jurisdiction is not available under § 1819, the Court has continuing jurisdiction over this case under 28 U.S.C. § 1367.  That statute provides that:

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.

28 U.S.C. § 1367(a).  The supplemental jurisdiction available under § 1367 expressly includes "claims that involve the joinder or intervention of additional parties."  *Id.*  As the Third Circuit found in *New Rock,* § 1367 is available here because (1) the Court initially

---

[6]  The *New Rock* court opined that once "the [federal agency] has successfully managed a thrift and either restored it to solvency or transferred its assets to willing buyers, the agency's role – and hence the logic of jurisdiction - no longer exists." *New Rock*, 101 F.3d at 1500-01.  This argument fails to appreciate the increased difficulty of finding willing buyers if federal jurisdiction is lost once the transfer is complete.  If the FDIC prefers a federal forum, it can be assumed that a buyer stepping into the FDIC's shoes would also prefer the federal forum, particularly if collection litigation has already commenced.

11

had original jurisdiction over the claims asserted by the FDIC and (2) the claims asserted by FAS Capital are related to the FDIC's claims. *New Rock,* 101 F.3d at 1506.

Pursuant to 28 U.S.C. § 1367(c)(3), the Court has, but may decline to exercise, continuing supplemental jurisdiction over related claims once it has dismissed all claims over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3). As the Supreme Court has observed:

> a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendant . . . claims. When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.

*Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 (1988)(footnote omitted). *See also Hardy v. Birmingham Bd. of Educ.*, 954 F.2d 1546, 1550 (11th Cir. 1992).

None of the above factors weigh in favor of declining jurisdiction in this case. This is a simple action for collection of a debt that defendant admits he owes. The case has been pending since September, 2011, and it has progressed through discovery and summary judgment. The interests of judicial economy, convenience and fairness would all be ill-served by requiring plaintiff to start over

12

in state court in order to collect on the notes that it purchased from the FDIC. *See New Rock,* 101 F.3d at 1506 ("Requiring the parties to re-try the case in state court would needlessly duplicate the resources expended by the federal courts.")  Moreover, the case does not raise any complex issues of state law such that any significant comity interest is implicated.  Accordingly, and as an alternative to the jurisdiction available under § 1819, the Court exercises its discretion to assert continuing supplemental jurisdiction over this case under § 1367.

**B.   The FDIC acquired and held the notes.**

It is undisputed that the loans at issue originated from Silverton Bank, which failed and was placed in the receivership of the FDIC. (Def.'s Resp. [21] at 4.)  Nevertheless, defendant argues that there is insufficient evidence to show that the FDIC ever acquired his notes such that it could validly transfer the notes to FAS Capital. (*Id.*)  In support of its claim that the FDIC held and properly transferred the notes, plaintiff cites a link to the FDIC's website indicating that Silverton Bank went into the FDIC's receivership in May, 2009. (Pl.'s Mot. [20] at 2.)  Based on that citation, plaintiff asks the Court to take judicial notice of the FDIC's receivership and corresponding rights in the notes at issue in this case. (Pl.'s Reply Br. [24] at 2.)

The Federal Rules of Evidence allow a court to take judicial

13

notice of an adjudicative fact that is not subject to reasonable dispute because it "is generally known within the trial court's territorial jurisdiction; or . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b). The Eleventh Circuit has held that "a district court may take judicial notice of public records within its files relating to the particular case before it or other related cases." *Cash Inn of Dade, Inc. v. Metro. Dade Cnty.*, 938 F.2d 1239, 1243 (11th Cir. 1991). Several courts have defined "public records" to include facts found on the websites of the FDIC and other government agencies. *Laborers' Pension Fund v. Blackmore Sewer Constr., Inc.*, 298 F.3d 600, 607 (7th Cir. 2002)(taking judicial notice of a bank's branch office and citing to the FDIC's website). *See also Lemperle v. Washington Mut. Bank*, No. 10cv1550-MMA(POR), 2010 WL 3958729, at *3 (S.D. Cal. Oct. 7, 2010)(Anello, J.) (information on the "FDIC's official websites is judicially noticeable") and *Peruta v. Cnty. of San Diego*, 678 F. Supp. 2d 1046, 1053-54 (S.D. Cal. 2010)("the Court can properly take judicial notice of the documents appearing on a governmental website"). That Silverton Bank was closed and the FDIC named its receiver is information that is accurately and reliably obtained from the FDIC's

14

website.[7]  The Court thus takes judicial notice of these facts.

Defendant also suggests that there is an insufficiency of evidence to prove that the notes were part of the receivership estate that the FDIC acquired from Silverton Bank. (Def.'s Resp. [21] at 4.)  As plaintiff points out, 12 U.S.C. § 1821 automatically grants the FDIC "all rights, titles, powers, and privileges" of an insured bank that is in receivership.   12 U.S.C. § 1821(d)(2)(A)(I). Pursuant to § 1821, the FDIC acquired *all* of Silverton Bank's assets upon being named receiver of the Bank.   *Id.*   Defendant does not dispute that the notes were in the possession of the Bank when the FDIC took over as receiver.  The record thus clearly establishes that the FDIC was the holder of the notes when it commenced this litigation and subsequently transferred the notes to FAS Capital.

**C.   FAS Capital currently holds the notes.**

In a variation of the above argument, defendant contends that plaintiff FAS Capital has failed to produce sufficient evidence to prove that it currently holds the notes. (Def.'s Resp. [21] at 8-10.)  In support of its claim to be the current note holder, plaintiff cites a "Bill of Sale" and an "Assignment and Assumption of Interests and Obligations" indicating that the FDIC sold and transferred the notes to FAS Capital in December, 2011. (Pl.'s Mot.

---

[7] *See* http://www.fdic.gov/bank/individual/failed/silverton.html (last visited Mar. 19, 2014).

[20] at Exs. D & E.)  Defendant claims that these documents have not been properly authenticated and thus cannot be considered by the Court.  (Def.'s Resp. [21] at 8-9.)  While plaintiff submitted the affidavits of two FAS Capital employees referencing the documents, the affidavits do not cite to the proper exhibit number.  (*Id.* at 9.) In addition, defendant argues that there is no evidence that the documents were executed by an authorized representative of the FDIC. (*Id.* at 10.)

In response to the above arguments, plaintiff contends that FAS Capital's current possession of the notes and the public notice found on the FDIC website affirmatively establish FAS Capital as holder of the notes.  (Pl.'s Reply [24] at 7-9.)  The Court agrees.  Georgia law expressly permits a note holder to establish its status as such "by producing competent evidence of its possession of the note." *First Citizens Bank & Trust Co., Inc. v. Hwy 81 Venture, LLC,* Civil Action No. 1:10-cv-2126-JEC, 2012 WL 779894, at *2 (N.D. Ga. Mar. 6, 2012)(Carnes, C.J.).  *See also Salahat v. FDIC,* 298 Ga. App. 624, 628 (2009).  Teresa Milton, an Associate Director at FAS Capital, attests in her affidavit that both of the notes are currently in FAS Capital's possession.  (Milton Aff. [20] at ¶¶ 10-12.)  Defendant does not contest this statement or present any evidence to oppose it. In fact, plaintiff presented the original notes to defendant and his counsel for inspection during defendant's deposition on May 1, 2012.

16

(*Id.* at ¶ 13 and Carr Dep. [18] at 14, 24.)  The record thus contains undisputed and incontrovertible evidence that FAS Capital is the current holder of the notes.

### D. **Plaintiff has failed to establish the remaining balances.**

Defendant's final argument concerning the amounts due on the notes is more problematic for plaintiff.  In support of its statement of the amounts due, plaintiff attaches a loan history statement for each note to its motion for summary judgment.  (Pl.'s Mot. [20] at Exs. F & G.)  Defendant challenges the loan history statements as inadmissable hearsay.  (Def.'s Resp. [21] at 11.)  He also correctly points out that plaintiff mistakenly attached two copies of the history of the first note and omitted the history of the second note.  (*Id.* and Pl.'s Mot. [20] at Ex. G.)  Instead of simply curing these defects in its reply, plaintiff curiously attempts to authenticate the principal amounts due through defendant's deposition testimony.  (Pl.'s Reply [24] at 10-11.)

During his deposition, defendant made several statements regarding his repayment of the notes.  He first stated that although he did not know the dates, he paid "whatever was required of [him], until [the first note] was paid down around 50- or $60,000."  (Carr Dep. [18] at 18-19.)  He also admitted to failing to make the final balloon payment due on the first note.  (*Id.* at 22-24.)  Plaintiff believes these statements, when viewed most favorably to the

17

defendant, establish that he made the "required" payments up to $60,000 and then failed to make the final balloon payment. (Pl.'s Reply [24] at 10-11.) As the note itself has been properly admitted and contains a provision regarding how the loan was to be paid back, plaintiff believes the Court can look to the defendant's deposition testimony and the first note to conclude that the defendant owes the original principal amount less $60,000. (*Id.*)

The Court is unpersuaded by plaintiff's arguments. In order to obtain summary judgment, plaintiff must establish every element essential to its case on which it will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322. While defendant's execution of and default on the notes is conceded and apparent to the Court, plaintiff still has the burden of showing that there are no issues of fact as to the amounts owed on the notes. *Id.* at 323. The evidence before the Court does not meet that burden.

While the notes do generally outline the repayment terms, the terms are not definite. For example, the first note calls for a balloon payment of $192,950 to be made on June 30, 2010. (Pl.'s Mot. [20] at Ex. A.) However, the note also states that "this <u>estimated</u> final payment is based on the assumption that all payments will be made <u>exactly as scheduled</u> and that the Index does not change." (*Id.*)(emphasis added). Defendant's statements in his deposition do not establish that he made payments exactly as scheduled. In fact,

18

when discussing his payment history, defendant noted that he was not sure of the dates he made payments because he did not have the documents in front of him. (Carr Dep. [18] at 18-19.) And plaintiff has not presented any evidence whatsoever concerning the potential "Index change" referenced in the note.

Moreover, even if the Court were to accept plaintiff's arguments, they would establish only the principal owed on the first note. In addition to the principal, plaintiff seeks pre- and post-default interest payments as well as late fees. (Pl.'s Mot. [20] at 20.) There is no evidence in the record concerning the amount of these additional payments and fees, which will necessarily depend on when defendant made each payment.

As to the second note, plaintiff believes defendant's statement that he "never made payments on [the second note]" entitles it to the full principal balance. (Pl.'s Reply [24] at 11.) Unfortunately, plaintiff's own brief creates a genuine issue of material fact because it states that defendant did make some payments. (Pl.'s Mot. [20-2] at 17 ("Carr made his first seventeen (17) interest-only payments").) This statement directly contradicts defendant's admission that he made no payments on the second note. If the Court is to view the evidence in the light most favorable to defendant, it would have to assume that these 17 payments were made. At the very least, genuine issues of material fact exist in regards to whether

19

these interest payments were made and the impact of any payments on the total amount due.

For the foregoing reasons, the Court concludes that plaintiff has failed to provide competent evidence substantiating the amounts due on the notes at issue here.  However, because defendant admits that he did execute and default on the notes, it appears to the Court that plaintiff can remedy its defective submissions quickly and simply.  Accordingly, the Court will **DENY** the plaintiff's motion for summary judgment [20] **without prejudice.**  Plaintiff should resubmit a history statement for each note and include an affidavit from a qualified individual properly identifying and authenticating each statement.  Assuming plaintiff complies with this directive, the Court will confirm plaintiff's calculations as to the amounts due on the notes and, assuming no meritorious objection from the defendant, enter summary judgment in favor of plaintiff in that amount.  If plaintiff does not comply, the Court will deny the motion for summary judgment with prejudice.

## III. ATTORNEY'S FEES

In Count II of the complaint, plaintiff seeks to recover attorney's fees under O.C.G.A. § 13-1-11. (Am. Compl. [11] at ¶¶ 59-60.)  That statute provides that "[o]bligations to pay attorney's fees upon any note or other evidence of indebtedness . . . shall be valid and enforceable" subject to the following conditions: (1) the

20

note contains an attorney's fee provision, (2) the debt owed under the note has matured, (3) the debtor was notified that he can avoid liability for attorney's fees by paying the debt within ten days of his receipt of the notice, (4) the ten day period has expired, and (5) the debt is collected by or through an attorney. *TermNet Merch. Serv., Inc. v. Phillips*, 277 Ga. 342, 344 (2003). Given the mandatory language of § 13-1-11, the Court does not have discretion to deny attorney's fees when all of its conditions are satisfied. *Id.* at 344-45.

## A. Defendant received proper notice.

Defendant concedes that the notes include an attorney's fees provision, but he claims that there is insufficient evidence that he received the notice required by § 13-1-11. (Def.'s Resp. [21] at 11-12.) There is some evidence that defendant received qualifying demand letters in connection with the notes in August, 2010. (Pl.'s Reply [24] at 12.) Defendant suggests that he did not receive the August, 2010 notice. (Def.'s Resp. [21] at 12.) However, it is undisputed that defendant was personally served with notice when he was served with the complaint. (Compl. [1] at Ex. D.)

Georgia law permits notice under § 13-1-11 to be given through a complaint. *See New House Prod., Inc., v. Commercial Plastics &*

21

*Supply Corp.*, 141 Ga. App. 199, 200 (1977).[8]  As the Georgia Court of Appeals explained in *New House Products*:

> where a pleading, setting up a claim on a note or other evidence of indebtedness which authorizes recovery of attorney fees, alleges that notice of intent to seek attorney fees has been given and [] notice [of the pleading] is thereby given . . . such notice is sufficient to authorize an award of attorney fees.

*Id.* at 200.  More recent Georgia appellate decisions affirm this result.  *See Upshaw v. S. Wholesale Flooring Co.*, 197 Ga. App. 511, 513 (1990)("[t]he complaint and the attachments thereto gave sufficient notice to [the debtor] of [the noteholder's] intent to collect attorney's fees") and *Long v. Hogan*, 289 Ga. App. 347, 347 (2008)("ten-day notice in complaint is sufficient").  Thus, defendant's alleged failure to receive the August, 2010 is of no consequence because plaintiff undeniably received notice in September, 2011 and failed to cure within ten days.

   **B.    The demand letter complied with O.C.G.A. § 13-1-11(a)(3).**

   Defendant also argues that the demand letter for the second note was not given "after maturity of the obligation" as required by O.C.G.A. § 13-1-11(a)(3).  (Def.'s Resp. [21] at 13.)  The second demand letter only requests $4,564.50 rather than full payment of the

_____

   [8] *New House Products* considered whether it was an error to award attorney's fees pursuant to O.C.G.A § 20-506(c).  Section 20-506 eventually became O.C.G.A. § 13-1-11.  *See United States v. Allen*, 699 F.2d 1117, 1119 (11th Cir. 1983)(noting that § 13-1-11 was formerly § 20-506).

principal and interest due on the note. (*Id.*) According to defendant, this partial demand should be considered a "request [for] correction of an arrearage" rather than notice of maturation. (*Id.*) Defendant's argument raises two issues: (1) whether the second note had matured by the time the complaint was filed and the accompanying demand letter was served and (2) whether a demand for partial rather than full payment technically complies with O.C.G.A. § 13-1-11.

The first issue is easily resolved. The second note, like the first, permits the creditor to declare the entire unpaid balance and interest due upon default. (Pl.'s Mot. [20] at Exs. A & C.) Under Georgia law, filing suit for the remaining balance on such a note effectively exercises the option to accelerate the debt and declare the whole principal due. *Little Sky, Inc. v. Rybka*, 264 Ga. App. 744, 748-49 (2003)("the filing of [a] suit for the entire debt" is an "outward affirmative act sufficient to constitute notice" of a creditor's option to declare the whole principal due)(quoting *Lee v. O'Quinn,* 184 Ga. 44, 45-46 (1937)). Assuming it did not mature earlier, the second note effectively matured when the FDIC filed this suit seeking recovery of the entire amount due on it. (*See* Compl. [1] at ¶ 51.) Accordingly, the defendant's argument that the demand letter was sent before the note matured is unpersuasive.

As to the second issue, the demand letter contains a table outlining the loan number, origination and payment dates, the

23

original amount and current balance, and the amount due on the note. (Pl.'s Mot. [20] at Ex. I.)  The table lists the current balance as $358,000, but it states that the "amount due" is $4,564.50.  (*Id.*) The letter further states that: "Unless the Amounts Due are paid in full within ten (10) days of your receipt of this letter, the provisions for attorneys' fees in the Promissory Note (the "Note") will be enforced as provided by O.C.G.A. § 13-1-11."  (*Id.*)  It concludes that "Demand is hereby made on you for payment in full of all of the amounts due under the Loans, in the amount of $4,564.50 (the "Amounts Due")."  (*Id.*)

Neither the Georgia Supreme Court nor any appellate court has determined whether such a partial demand is statutorily sufficient under O.C.G.A. § 13-1-11(a)(3).  However, the Georgia Supreme Court has held that notice can properly be sent under § 13-1-11 "even though there [is] uncertainty as to the amount due." *Kauka Farms, Inc. v. Scott*, 256 Ga. 642, 645 (1987).  The Court of Appeals has similarly found that a notice substantially complied with § 13-1-11 although it misstated the amount due. *See Carlos v. Murphy Warehouse Co., Inc.*, 166 Ga. App. 406, 408 (1983)(notice was sufficient although the evidence ultimately established that the amount demanded was higher than it should have been) and *Shier v. Price*, 152 Ga. App. 593, 595 (1979)("where the notice alleges the face value of the note in question plus interest, the fact that the exact amount owing is

24

not also stated does not invalidate it"). These cases demonstrate that an error as to the amount due does not render a notice deficient under O.C.G.A. § 13-1-11.

The appellate court's decision in *Kroger Co. v. U.S. Foodservice of Atlanta, Inc.*, 270 Ga. App. 525 (2004) is also instructive. The demand letter in *Kroger* notified the defendant of the amount due on a commercial account and advised the defendant that the account would be "refer[red] . . . to [the plaintiff's] attorneys for collection" if it was not settled within 14 days. *Id.* at 531 (internal quotation marks omitted). Although the letter did not otherwise advise the defendant of his ability to avoid liability by paying the debt within the specified time frame, the consolidated pretrial order reiterated the plaintiff's claim for statutory attorney's fees and cited § 13-1-11. *Id.* Relying on both the demand letter and the pretrial order, the court concluded that the plaintiff was entitled to collect attorney's fees under § 13-1-11. *Id. Kroger* illustrates that the Court is not limited to a single document to determine whether the requirements of § 13-1-11(a)(3) were satisfied.

Applying the above authorities, the Court finds that the demand letter substantially complies with the requirements of § 13-1-11, and that plaintiff is therefore entitled to recover statutory attorney's fees with respect to the second note. The letter specifically provides notice and an opportunity to tender the amount due in order

25

to avoid liability for attorney's fees.  Although defendant complains that the stated "amount due" is less than it should have been, defendant concedes that he did not tender the $4,564.50 demanded, or indeed, any amount at all, in response to the notice.  And as *Kroger* illustrates, the Court may look to the complaint to satisfy the requirements of § 13-1-11(a)(3).  The complaint specifically seeks judgment on the entire outstanding balance of the second note, $358,000.  (Compl. [1].)  Accordingly, the Court rejects defendant's claim that the demand letter for the second note is facially defective.

### CONCLUSION

For the foregoing reasons, the Court **DENIES without prejudice** plaintiff's Motion for Summary Judgment [20].  The Court **DIRECTS** plaintiff to resubmit accurate history statements, along with the requisite affidavits regarding the amounts due under the each note, by **Friday, April 18, 2014**.  Assuming plaintiff complies with this directive, the Court will modify its ruling regarding the remaining balances and grant plaintiff's motion [20].  If plaintiff fails to comply, the Court will deny plaintiff's motion [20] with prejudice.

SO ORDERED, this 20th day of March, 2014.


/s/ Julie E. Carnes
JULIE E. CARNES
CHIEF UNITED STATES DISTRICT JUDGE

26